UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

YLONDA WHITEHEAD,

        Plaintiff,

v.                                 Case No.  8:22-cv-02437-SPF

MARTIN O'MALLEY,
Commissioner of the Social
Security Administration,[1]

        Defendant.
_____/

**ORDER**

      Plaintiff seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI").  As the Administrative Law Judge's ("ALJ") decision is based on substantial evidence and employs proper legal standards, the Commissioner's decision is affirmed.

**I.      Procedural Background**

      Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 419–27). The Commissioner denied Plaintiff's claims initially and upon reconsideration (Tr. 168–73, 176–85).  At Plaintiff's request, the ALJ held a hearing where Plaintiff testified (Tr. 65–90, 186–87).  The ALJ issued an unfavorable decision finding Plaintiff not disabled, thereby denying her claims for benefits (Tr. 139–59).  Plaintiff then requested review from

---

[1] Martin O'Malley became the Commissioner of the Social Security Administration on December 20, 2023, and is substituted as Defendant in this suit under Rule 25(d) of the Federal Rules of Civil Procedure.

the Appeals Council (Tr. 271–72).  The Appeals Council granted Plaintiff's request and remanded the case to the ALJ, directing the ALJ to further consider two medical source opinions and Plaintiff's maximum residual functional capacity ("RFC") (Tr. 160–63). The ALJ held another hearing where Plaintiff testified (Tr. 44–64), and the ALJ again denied Plaintiff's claim (Tr. 7–29).  Plaintiff appealed this decision to the Appeals Council, which declined review (Tr. 1–6).  Plaintiff then filed a timely complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.    Factual Background and the ALJ's Decision

Plaintiff, who was born in 1973 (Tr. 20), alleges disability beginning July 28, 2015 (Tr. 10).  She has a high school education (Tr. 20) and work experience as a mold cleaner (Tr. 19).   She alleges disability from a wrist injury and pain in her neck, back, and shoulders (Tr. 14).

The ALJ concluded that Plaintiff met the insured status requirements through December 31, 2020, and had not engaged in substantial gainful activity since July 28, 2015, the alleged onset date (Tr. 13).  After conducting a hearing and reviewing the record evidence, the ALJ determined that Plaintiff had the following severe impairments: cervical and lumbar spine degenerative disc disease, Kienbock's disease (right wrist), DeQuervain's tenosynovitis (right thumb), right shoulder labral tear, headaches, and obesity (*Id.*).  Notwithstanding these impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*Id.*).  The ALJ then concluded that Plaintiff had an RFC with the following limitations:

[T]o lift up to 10 pounds, sit for two hours at one time for a total of 6 hours in an 8-hour workday, stand for 30 minutes at one time for a total of 2 hours of an 8 hour workday, and can walk for 30 minutes at one time for a total of 2 hours of an 8 hour workday. The claimant can occasionally operate foot controls. The clamant can never reach overhead, but can frequently reach in all other directions. She can frequently handle, finger, and feel. The claimant can never climb ladders, ropes, or scaffolds; can never crawl; can occasionally climb ramps and stairs; and can occasionally balance, stoop, kneel, and crouch. The claimant must avoid loud noise, vibrations, hazardous machinery, and heights.

(Tr. 14). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that could reasonably be expected to produce the alleged symptoms, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence (Tr. 15).

Considering Plaintiff's impairments and the assessment of a vocational expert, the ALJ determined that Plaintiff could no longer work as a mold cleaner (Tr. 19–20) but could work as an order clerk, scale attendant, and electronics monitor—all jobs that the ALJ determined exist in significant numbers in the national economy (Tr. 20). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the vocational expert's testimony, the ALJ found Plaintiff not disabled (Tr. 21).

### III.    Legal Standard

To be entitled to benefits, a claimant must be disabled: they must be unable to engage in any substantial gainful activity because of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that

3

results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the Social Security Administration has promulgated detailed regulations that outline a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform their past work. If the claimant cannot perform their prior work, the ALJ must decide in step five whether the claimant can do other work in the national economy in view of their age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).   While the court reviews decisions of the Commissioner with deference to factual findings, no such deference is given to legal conclusions.   *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for the ALJ's even if it finds that the evidence preponderates against the ALJ's decision.   *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Reversal is required if the Commissioner fails to either apply the correct law or to give the reviewing court sufficient reasoning to determine that the Commissioner conducted the proper legal analysis.   *Keeton*, 21 F.3d at 1066.   The scope of review is thus limited to whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.   42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## IV.   Analysis

Plaintiff argues that (1) the ALJ improperly evaluated the medical opinion evidence and (2) the ALJ erred in evaluating her subjective complaints.   For the following reasons, the Court finds that the ALJ applied the correct legal standards, and that substantial evidence supports his decision.

### A. Opinion Evaluation

Plaintiff first argues that the ALJ incorrectly evaluated the opinions of John Pella, M.D.; Jeffrey Tedder, M.D.; Robert Steele, M.D.; and Charles McCluskey, P.A.

Specifically, Plaintiff maintains that the ALJ (1) afforded excessive weight to the opinion of impartial medical expert Dr. Pella; (2) did not have good cause to discount the opinions of treating physician Dr. Tedder and physician assistant Mr. McCluskey; and (3) insufficiently explained his assessment of state agency medical consultant Dr. Steele's opinion.

In evaluating a disability claim, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Comm'r of Soc. Sec.*, 625 F. App'x 960, 962 (11th Cir. 2015) (citing 20 C.F.R. § 404.1527(b)).[2] "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). If a doctor's statement is a medical opinion, "the ALJ must state with particularity the weight given to [it] and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (internal citation omitted). The ALJ must consider: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of the doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's opinion is with the record as a whole; and (5) the doctor's area of specialization. 20 C.F.R.

---

[2] Although this regulation was amended effective March 27, 2017, the new regulation only applies to applications filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c, 416.920c. Because Plaintiff's applications were filed on April 12, 2016, this prior version of the regulation applies to Plaintiff's claim.

§§ 404.1527(c), 416.927(c).  But the ALJ is not required to explicitly address each of these factors.  *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011).

The regulations provide for three tiers of medical opinions: (1) treating physicians; (2) non-treating, examining physicians; and (3) non-treating, non-examining physicians. *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (citing 20 C.F.R. §§ 404.1527(c)(1)–(2), 416.927(c)(1)–(2)).  While an ALJ must usually give substantial or considerable weight to a treating physician's opinion, the opinion of a one-time examining doctor merits no such deference.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)).  An examining doctor's opinion is usually accorded greater weight than that of a non-examining doctor. *Huntley v. Comm'r of Soc. Sec.*, 683 F. App'x 830, 832 (11th Cir. 2017) (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)).

The more a medical source offers evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive.  20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).  Also, the more consistent the medical opinion is with the entire record, the more weight that opinion will receive.  20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).  Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford*, 363 F.3d at 1159.  Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Phillips v. Barnhart*, 357 F.3d

1232,1240–41 (11th Cir. 2016); *Crawford*, 363 F.3d at 1159–60.  But, in the end, an ALJ "is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion."  *Huntley*, 683 F. App'x at 832 (citing *Sryock*, 764 F.2d at 835) (emphasis in original); *accord Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) ("Of course, the ALJ may reject any medical opinion if the evidence supports a contrary finding.").

### 1. Dr. Pella

Plaintiff contends that the ALJ erred by affording great weight to Dr. Pella's opinion.  She argues that Dr. Pella's opinion should instead be discounted because he was a non-examining consultant rather than the treating physician; his opinion was inconsistent with the evidence; and he has no medical specialization in back, neck, shoulder, hand, and wrist issues (Doc. 18 at 4–9; Tr. 18).  The Commissioner responds that the ALJ properly assigned great weight to Dr. Pella's opinion (Doc. 21 at 4–13).  After reviewing the record, the Court agrees with the Commissioner.

In March 2018, Dr. Pella opined that Plaintiff can lift and carry 10 pounds; sit for 2 hours at one time and for 6 hours in an 8-hour workday; stand for one half hour at a time and for 2 hours in an 8-hour workday; walk one half hour at a time and for 2 hours in an 8-hour workday; overhead push/pull occasionally; reach frequently; occasionally use her feet; occasionally climb a flight of stairs, balance, stoop, and kneel; she cannot climb ladders, ropes, or scaffolds; she cannot crawl; she can occasionally drive; she cannot engage in commercial driving; she can occasionally work around moving parts; and she cannot be at unprotected heights (Tr. 905–07).  The ALJ provided the following explanation for why he afforded great weight to Dr. Pella's opinion:

The undersigned afforded this opinion great weight since Dr. Pella was able to review the available evidence and he is familiar with the Agency's standard of disability. Dr. Pella provided a detailed explanation and accommodated the claimant's objective abnormalities. The claimant's treatment notes since then have reflected only routine follow-up visits with little change in the claimant's condition. Overall, while the claimant has reported pain and exhibited decreased range of motion, she still has a normal gait and normal strength.

(Tr. 18).

Plaintiff argues that Dr. Pella's opinion should be given less weight because he was a non-treating, non-examining physician (Doc. 18 at 4). But the Commissioner rightly notes that "[i]t is not improper . . . for an ALJ to consider [reports of non-examining, non-treating physicians]—as long as the opinion of the treating physician is accorded proper weight" (Doc. 21 at 4) (quoting *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986)). And as explained below, the ALJ accorded appropriate weight to the opinions of Dr. Tedder and Mr. McCluskey, Plaintiff's treating physician and physician's assistant. Dr. Pella's status as a non-examining, non-treating physician does not preclude the ALJ from affording his opinion great weight. *See, e.g.*, *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (finding no error where ALJ gave more weight to non-examining, non-treating physician where ALJ articulated good cause for discrediting the treating physician's opinion); *Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) ("Here, there is substantial evidence supporting the ALJ's conclusion that there was good cause to afford more weight to the opinion of Dr. Goren, a nonexamining board-certified neurologist, than to the opinions of Dr. Vernacchio and Dr. Kantor, who were Forsyth's treating physicians.").

Plaintiff next argues that Dr. Pella did not review sufficient objective evidence to form an opinion as to the nature and severity of Plaintiff's impairments during the relevant time period (Doc. 18 at 4).  Plaintiff relies on a note by Dr. Pella that appears to state he lacked post-July 2016 medical evidence (Doc. 18 at 4; Tr. 905).  However, as the ALJ notes, Dr. Pella reviewed the evidence available to him at the time, drafted an opinion, and provided a detailed explanation for it (Tr. 18, 905–07).  The Court agrees with the Commissioner that "[e]ven if the doctor's statement is evidence that cuts against the opinion to an extent, the ALJ assessed whether the opinion was consistent with evidence in the entire record and found that it was (Tr. 18)" (Doc. 21 at 9).  Nonetheless, as the Commissioner states, the ALJ provided other reasons for giving weight to the opinion— for instance, he wrote that Dr. Pella is familiar with the disability standard, that Dr. Pella accommodated the claimant's objective abnormalities, and that Plaintiff's treatment notes have reflected only routine visits and little change in her condition (Tr. 18).

Plaintiff also contends that Dr. Pella's opinion should not be afforded great weight because he does not specialize in back, neck, shoulder, hand, or wrist issues (Doc. 18 at 7).  While the ALJ was required to consider Dr. Pella's specialization when evaluating his opinion, he did not need to address it.  20 C.F.R. §§ 404.1527(c), 416.927(c); *Lawton*, 431 F. App'x at 833.  Plaintiff cites no authority supporting the proposition that the ALJ cannot rely on a medical expert without subject matter expertise.

Plaintiff has not demonstrated that the ALJ erred in his assessment of Dr. Pella's opinion.  The Court finds that substantial evidence supports the ALJ's decision to give great weight to Dr. Pella's opinion.

10

### 2.  Dr. Tedder and Mr. McCluskey

Plaintiff contends that the ALJ improperly discounted the opinions of treating physician Dr. Tedder and Mr. McCluskey.  The Court finds that the ALJ had good cause to do so.

On January 17, 2018, Dr. Tedder filled out a Physical Residual Functional Capacity Questionnaire in which he opined that Plaintiff's symptoms were frequently severe enough to interfere with attention and concentration; she can sit for thirty minutes at one time and for less than two hours in an eight-hour workday; she can stand for ten minutes at a time and less than two hours during the workday; she needs to walk around and shift positions and will; she needs unscheduled breaks; she needs to elevate her legs for 25% of the workday; she can rarely lift twenty pounds and occasionally lift ten pounds; she can rarely look up/down and rotate her head; she can occasionally twist, stoop, crouch, and climb stairs; she can rarely climb ladders; she can only reach, grasp, and finger for 10% of the workday; and she is likely to be absent ten days per month (Tr. 911–14). On August 24, 2018, Dr. Tedder offered the same opinion (Tr. 915–18).  Mr. McCluskey, who works as a physician's assistant under Dr. Tedder, issued a similar opinion on November 4, 2020 (Tr. 967–69).

The ALJ found that Dr. Tedder and Mr. McCluskey's opinions were not well-supported by the available evidence because (1) Dr. Tedder's treatment was focused on Plaintiff's shoulder; (2) Dr. Tedder's examinations, when completed, were essentially unchanged; (3) there is no record evidence that the Plaintiff needs to elevate her legs, cannot rotate her head, or has significant manipulative limitations bilaterally; and (4)

Plaintiff has seen Dr. Tedder for only routine follow-up visits and limited treatment (Tr. 19).

Plaintiff contends that "[e]ven if not given 'controlling weight', a treating physician's opinion is to be given substantial weight" (Doc. 18 at 10). To the contrary, as the Commissioner notes, the ALJ must afford the treating physician's opinion substantial or controlling weight unless "good cause" is shown to the give the opinion less weight. *Crawford*, 363 F.3d at 1159. That Dr. Tedder was Plaintiff's treating physician does not mean his opinions must be afforded substantial or controlling weight. And for the reasons below, good cause was shown to discount his and Mr. McCluskey's opinions.

Plaintiff also argues that the length of Dr. Tedder's treatment of Plaintiff—four years and eleven months—renders his opinions "particularly valuable" (Doc. 18 at 10). It is true that the ALJ must consider the length, nature, and extent of a doctor's relationship with the claimant. 20 C.F.R. §§ 404.1527(c), 416.927(c). But the ALJ is not required to explicitly address each of these considerations. *Lawton*, 431 F. App'x at 833. The length of the doctor-patient relationship is one factor of many that the ALJ must consider in weighing a doctor's opinion. Plaintiff is incorrect to the extent that she argues the length of Dr. Tedder's treatment entitles his opinions to substantial or controlling weight. The ALJ must weigh medical opinions given all factors listed in the relevant regulations. 20 C.F.R. §§ 404.1527(c), 416.927(c).

Plaintiff notes that Dr. Tedder is a specialist in neck, back, shoulder, and wrist impairments (Doc. 18 at 10). She contends that Dr. Tedder's specialization is "particularly important in assessing the impairments of Ms. Whitehead" (*Id.*). Plaintiff is

correct that specialization is one of the factors that must be considered by the ALJ in weighing medical opinion evidence; however, it is not necessarily error for an ALJ to weigh an opinion of a relevant specialist less than that of a different type of doctor.  20 C.F.R. §§ 404.1527(c), 416.927(c).  As discussed below, the ALJ articulated good cause to discount Dr. Tedder's opinions despite his specialization.

Plaintiff also challenges the ALJ's basis for finding good cause to discount the opinion of Dr. Tedder.  First, Plaintiff contends that the ALJ's statement that "Dr. Tedder's treatment was focused on the claimant's shoulder" is not a valid reason to discount his opinions (Doc. 18 at 10; Tr. 19).  Plaintiff contends that the ALJ, in making this statement, "was not saying that Dr. Tedder was not a treating physician regarding the back and neck. He said that Dr. Tedder paid more attention to her shoulder, the impairment for which she was referred to him" (Doc. 18 at 11).  Plaintiff notes that Dr. Paul Zak, M.D., referred her to Dr. Tedder for her shoulder; that Dr. Tedder had all of Dr. Zak's records; that Dr. Tedder had Plaintiff's cervical and lumbar spine MRIs; and that he had all of the information that Dr. Pella had (*Id.*).  For these reasons, Plaintiff argues, the ALJ's statement that Dr. Tedder's treatment was focused on Plaintiff's shoulder should not be misinterpreted to mean that Dr. Tedder was the treating physician for only Plaintiff's shoulder (*Id.* at 10–11).  But the ALJ makes this statement in articulating the "good cause" necessary to discount Dr. Tedder's opinions—he never disputes that Dr. Tedder was Plaintiff's treating physician.  In any event, the ALJ's statement that Dr. Tedder's treatment focused on Plaintiff's shoulder appears to be correct (Tr. 784–848, 920–929, 976–987, 988–1001).

13

Plaintiff then addresses a dispute arising out of a footnote in the ALJ's decision, which states, "While Dr. Tedder is listed as the opinion provider, the signatures in Exhibit 19F and Exhibit 20F are drastically different from Dr. Tedder's signature in Exhibit 27F" (Tr. 19).  The ALJ's decision makes no further mention of this matter.  Plaintiff argues that the signatures in Exhibit 27F are made by a signature stamp and that the signatures on Dr. Tedder's January 17, 2018, and August 24, 2018, opinions were handwritten in haste but are clearly discernable as Dr. Tedder's signature (Doc. 18 at 11).  As the Commissioner states, the ALJ did not indicate that he discounted Dr. Tedder's opinions because of any discrepancy in the appearance of the signatures (Doc. 21 at 12; Tr. 19).  Rather, the ALJ's uses the footnote to make a brief observation before addressing the substance of his assessment (Tr. 19).

Plaintiff argues that the ALJ wrongly "discredit[ed] Dr. Tedder's opinions" when the ALJ wrote that "[Dr. Tedder's] examinations (when completed) were essentially unchanged" (Doc. 18 at 11).  Plaintiff states, "[T]hat a condition has not changed is not a basis for saying that it was not disabling" (*Id.* at 12).  The Commissioner responds that the ALJ properly points out the inconsistency between Dr. Tedder's opinions and the unchanged examinations (Doc. 21 at 12).  In his opinions, Dr. Tedder writes "Symptoms ongoing and getting worse" (Tr. 911, 915).  But a review of Plaintiff's examination notes from December 18, 2015 (the first visit reflected in the record), and November 4, 2020 (the final visit reflected in the record), shows exam results that are indeed merely identical (Tr. 786–87, 989–90).  Under 20 C.F.R. § 404.1527(c)(3), the ALJ must evaluate whether medical opinions are supported by the evidence.  Therefore, because of the discrepancy

between Dr. Tedder's opinions and his medical records, the Court cannot find that the ALJ erred in noting Dr. Tedder's mostly unchanged examinations.

Plaintiff contends that "[t]he ALJ tries to discredit Dr. Tedder's opinions because he took into account the effects of [Plaintiff's] severe impairments]" (Doc. 18 at 12).  She argues that the ALJ minimizes the impacts of the impairments he recognizes earlier in his decision (*Id.*).  The implication appears to be that the ALJ should have afforded Dr. Tedder's opinions more weight because they align more with Plaintiff's impairments. After considering the record, the ALJ found sufficient evidence to determine that Plaintiff had the following severe impairments: cervical and lumbar spine degenerative disease, Kienbock's disease (right wrist), DeQuervain's tenosynovitis (right thumb), right shoulder labral tear, headaches, and obesity (Tr. 13).  But ultimately, good cause existed for the ALJ to discount Dr. Tedder's opinions because they are not bolstered by the evidence, and they are inconsistent with his medical records.  As noted by the ALJ:

> At the claimant's next and last documented visit, on November 4, 2020, the claimant reported that her right shoulder is painful and her left shoulder is getting worse, her lumbar spine radiates down her legs, her cervical spine is stiff and sore, her arms are weak, and her right upper extremity is starting to atrophy (Exhibit 28F). Dr. Tedder still observed the claimant's lumbar spine range of motion was good with normal strength and negative straight leg raise (Exhibit 28F). Her right shoulder examination was the same – 160 degrees forward flexion, 90 degrees abduction, 45 degrees extension and external rotation, positive impairment, and normal strength (Exhibit 28F). The claimant's left shoulder examination was similar except her forward flexion was 120 degrees (Exhibit 28F). In addition, her cervical spine had intact sensation and normal strength with pain at extremes of motion (Exhibit 28F). Dr. Tedder did not offer any treatment, but instructed the claimant to follow up in three months (Exhibit 28F).

(Tr. 17).  The ALJ evaluated Dr. Tedder's opinions and found that they were not consistent with Plaintiff's medical records, which reflect a degree of pain but also

15

normal findings (Tr. 17–19).  This was good cause to discount Dr. Tedder's opinions. *Phillips*, 357 F.3d at 1240–41.  Substantial evidence supports the ALJ's evaluation of Dr. Tedder and Mr. McCluskey's opinions.

### 3.  Dr. Steele

Plaintiff argues that the ALJ's evaluation of Dr. Steele's opinion is improper because (1) the evaluation lacked sufficient explanation and (2) the ALJ failed to evaluate Dr. Steele's opinion separately from Dr. Pella's opinion, which Plaintiff maintains is problematic (Doc. 18 at 14).  Plaintiff contends that the ALJ therefore did not meet the explanation requirement applicable to all physician opinions.  She states, "Since there are such problems with the opinions of Dr. Pella . . . the failure of the ALJ to give more detailed explanation regarding Dr. Steele's opinions also requires reversal" (*Id.*).  In response, the Commissioner defends the ALJ's evaluation, writing that "[t]he decision sufficiently shows the ALJ found the opinion only somewhat consistent with the evidence that showed a need for greater limitations" (Doc. 21 at 13).  As a non-treating physician, Dr. Steele's opinion is not afforded "substantial or considerable weight" by default; instead, the ALJ must only "state with particularity the weight given to the different medical opinions and the reasons therefor."  *Lawton*, 431 F. App'x at 834.  The ALJ's assessment of Dr. Steele's opinion is not as lengthy as his assessments of Dr. Pella, Dr. Tedder, and Mr. McCluskey's opinions (Tr. 18–19).  However, it still "state[s] with at least some measure of clarity the grounds for [the ALJ's] decision" by detailing Dr. Steele's opinion and noting the ALJ's findings of "greater limitations based upon Dr. Pella's opinion and the evidence received at the hearing level" (Tr. 19); *Lawton*, 431 F.

16

App'x at 834.  The Court finds that substantial evidence supports the ALJ's evaluation of Dr. Steele's opinion.

### B.  Subjective Complaints

Finally, Plaintiff argues that the ALJ erred in his assessment of her subjective complaints.[3]  Specifically, Plaintiff maintains that the ALJ "discredited Ms. Whitehead's symptoms improperly," taking issue primarily with the ALJ's analysis of whether Plaintiff needed surgery and whether she could afford it (Doc. 18 at 15–17).

In determining whether a claimant is disabled, the ALJ must consider all symptoms, including pain, and the extent to which those symptoms are reasonably consistent with the objective medical evidence and other evidence.  20 C.F.R. § 404.1529(a).  Once a claimant establishes that his pain or other subjective symptoms are disabling, "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Land v. Comm'r of Soc. Sec.*, 843 F. App'x 153, 155 (11th Cir. 2021) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)).

The Eleventh Circuit has established a three-part "pain standard" for the Commissioner to apply in evaluating a claimant's subjective complaints.  The standard requires: (1) evidence of an underlying medical condition; and either (2) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (3) that

---

[3] While Plaintiff frames this issue as "The ALJ erred in assessing symptoms and the RFC," (Doc. 18 at 2, 14), Plaintiff appears to actually challenge the ALJ's consideration of her subjective complaints.

the objectively determined medical condition is of such severity it can reasonably be expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." *Davis v. Astrue*, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). If an ALJ rejects a claimant's subjective testimony, she must articulate explicit and adequate reasons for this decision. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

Social Security Ruling 16-3p cautions that "subjective symptom evaluation is not an examination of an individual's character." *Id.* Adjudicators, as the regulations dictate, are to consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record. *Id.* The regulations define "objective evidence" to include medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings. 20 C.F.R. § 404.1529. "Other evidence," again as the regulations define, includes evidence from medical sources, medical history, and statements about treatment the claimant has received. *See* 20 C.F.R. § 404.1513. Subjective complaint evaluations are the province of the ALJ. *Mitchell v. Comm'r of Soc. Sec.,* 771 F.3d 780, 782 (11th Cir. 2014).

Here, the ALJ relied on boilerplate language in assessing Plaintiff's subjective complaints:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 15). This language directly addresses the Eleventh Circuit's standard and is not improper *if* supported by substantial evidence. *See Danan v. Colvin*, No. 8:12-cv-7-T-27TGW, 2013 WL 1694856, at * 3 (M.D. Fla. Mar. 15, 2013), *report and recommendation adopted*, 2013 WL 1694841 (Apr. 18, 2013). Here, the Court finds it is. In evaluating Plaintiff's subjective complaints, the ALJ explained that while Plaintiff suffers from severe impairments, the ALJ provided for significant limitations in Plaintiff's RFC to address those impairments (Tr. 18). He then explained that

> [T]he claimant maintains normal strength and intact sensation as well as the ability to touch her toes and stand on heels and toes (Exhibit 28F). While the claimant alleged that she needs surgery on her neck, lower back, wrist, and shoulder, it is not clear that all these surgeries have been recommended. Dr. Zak recommended a cervical spine surgery if conservative treatment failed which is not evident from the record and he recommended a discogram rather than lumbar spine surgery (Exhibit 3F). Dr. Gargasz recommended right wrist surgery in June 2015 (prior to the alleged onset date), but the claimant's later treatment notes do not document significant abnormalities (Exhibit 18F). The claimant has some wrist joint effusion, but she has no tenderness, normal range of motion, intact sensation, and good capillary refill (Exhibit 27F and Exhibit 28F). Finally, the claimant alleges that she cannot obtain surgery or see a primary care provider because she has no insurance or money (Exhibit 26E). However, there is no evidence that the claimant attempted to seek treatment from any free or sliding fee scale clinic. Furthermore, the claimant has not required emergency care due to her symptoms and her examinations have remained stable.

(Tr. 18).

Plaintiff argues that the ALJ improperly discredited Plaintiff's testimony for noncompliance with prescribed treatment because she could not afford surgery. Plaintiff is correct that a claimant's inability to afford prescribed treatment excuses noncompliance with it. *Dawkins v. Bowen*, 848 F.2d 1211, 1212 (11th Cir. 1988). And remand is appropriate "[w]hen the ALJ primarily if not exclusively relies on a claimant's failure to seek treatment, but does not consider any good cause explanation for this failure." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1268 (11th Cir. 2015) (internal quotation marks and citations omitted). However, "if the ALJ's determination is also based on other factors, such as RFC, age, educational background, work experience, or ability to work despite the alleged disability, then no reversible error exists." *Id.* (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (per curiam)). Here, the ALJ's finding of no disability was not based on Plaintiff's failure to have surgery or noncompliance with treatment. Instead, in assessing Plaintiff's subjective complaints, the ALJ examined the record as a whole—including the fact that Plaintiff did not have surgery—and found that Plaintiff's allegations about the intensity, persistence, and limiting effects of her symptoms were not fully supported by the record.

A reviewing court will not disturb a clearly articulated finding regarding a claimant's subjective complaints supported by substantial evidence in the record. *Foote*, 67 F.3d at 1562 (per curiam) (citation omitted). Here, the ALJ articulated explicit and adequate reasons for discrediting Plaintiff's subjective complaints, relying on Plaintiff's medical treatment notes and treatment history. *See Dyer*, 395 F.3d at 1210. In reviewing

Plaintiff's medical record and examining the record as a whole, the ALJ then determined that the formulated RFC appropriately reflects the most Plaintiff could do on a sustained basis (Tr. 14).  To the extent Plaintiff asks the Court to re-weigh the evidence or substitute its opinion for that of the ALJ, it cannot. On this record, the ALJ did not err in considering Plaintiff's subjective complaints.

**V.    Conclusion**

Accordingly, after consideration, it is hereby

ORDERED:

  1.  The decision of the Commissioner is affirmed.

  2.  The Clerk is directed to enter final judgment in favor of the Defendant and close the case.

**ORDERED** in Tampa, Florida, on this 7th day of February, 2024.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

21